IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| RICHARD SEARS, | : | |
| Plaintiff | : | |
| | : | No. 1:17-cv-869 |
| v. | : | |
| | : | (Judge Kane) |
| DANTE MCCOY, et al., | : | |
| Defendants | : | |

**MEMORANDUM**

I.     BACKGROUND

Pro se Plaintiff Richard Sears, an individual currently confined at the State Correctional Institution in Albion, Pennsylvania ("SCI Albion"), initiated the above-captioned action by filing a complaint pursuant to 42 U.S.C. § 1983 on May 16, 2017, against Defendants Dante McCoy ("McCoy"), Lieutenants A. Peters ("Peters"), J. Eveland ("Eveland"), and Brian Carpentier ("Carpentier"), Captain Sciochitana ("Sciochitana"), Deputy Superintendent Facility Manager E. Baumbach ("Baumbach"), Deputy Superintendent for Centralized Services Anthony Luscavage ("Luscavage"), Superintendent Vincent Mooney ("Mooney"), and Chief Grievance Officer Dorina Varner ("Varner"). (Doc. No. 1.) Plaintiff claims that after he filed grievances against Defendant McCoy, Defendant McCoy verbally abused and harassed him by calling him a "rat" in front of other inmates and made a number of sexually explicit comments to him. (Id.) Plaintiff also alleges that Defendant McCoy retaliated against him for filing grievances by throwing out Plaintiff's commissary purchase slips, placing a "dark brown foreign object" in his meal, and stealing and destroying a photograph of Plaintiff's father. (Id.) Plaintiff also avers that Defendants Peters, Eveland, Mooney, Varner, Scicchitano, and Carpentier had an "opportunity to do something meaningful and positive for Mr. Sears and curb or deter any future forms of such behavior by defendant McCoy[,]" but they "did nothing, causing Mr. Sears to be

further subjected to such behavior [by McCoy]." (Id.) Plaintiff did not assert any allegations against Defendants Baumbach or Luscavage.

In a Memorandum and Order dated September 12, 2017, the Court granted Plaintiff leave to proceed in forma pauperis and screened Plaintiff's complaint pursuant to 28 U.S.C. § 1915(e)(2). (Doc. Nos. 5, 6.) Specifically, the Court: (1) dismissed Plaintiff's claims of verbal abuse against Defendant McCoy; (2) dismissed his claims against Defendants Peters, Eveland, Carpentier, Sciochitana, and Varner because he could not maintain a claim based upon their handling of his grievances and appeals; (3) dismissed Defendants Baumbach and Luscavage without prejudice because Plaintiff had failed to make any allegations against them; and (4) noted that Plaintiff's First Amendment retaliation claim against Defendant McCoy could proceed. (Doc. No. 5.) The Court granted Plaintiff leave to file an amended complaint within thirty (30) days so that he could set forth allegations against Defendants Baumbach and Luscavage. (Id.)

Plaintiff did not file an amended complaint. Accordingly, by Order dated October 31, 2017, the Court directed service of Plaintiff's complaint upon Defendant McCoy. (Doc. No. 7.) Defendant McCoy filed his answer on December 5, 2017. (Doc. No. 10.) After the parties engaged in discovery, Defendant McCoy filed a motion for summary judgment (Doc. No. 20) and supporting materials (Doc. Nos. 21, 22). After receiving an extension of time, Plaintiff filed a response in opposition. (Doc. No. 26.) After being granted leave to do so (Doc. Nos. 25, 27), Defendant McCoy filed a supplemental declaration in support of his motion for summary judgment on February 19, 2019. (Doc. No. 28.)

On March 1, 2019, Plaintiff filed a motion for an extension of time to fully respond to Defendant McCoy's motion for summary judgment, noting that he had not received Defendant

2

McCoy's statement of material facts. (Doc. No. 29.) In an Order dated March 4, 2019, Magistrate Judge Carlson granted Plaintiff's motion and directed him to file his response on or before April 1, 2019. (Doc. No. 30.) Plaintiff subsequently filed a motion to strike the motion for summary judgment and supporting materials (Doc. No. 31), brief in support of his motion to strike (Doc. No. 32), and motion for an extension of time to file a response (Doc. No. 33). In an Order dated May 2, 2019, the Court denied Plaintiff's motion to strike, directed the Clerk of Court to send Plaintiff a copy of Defendant McCoy's statement of facts, and granted Plaintiff's motion for an extension of time to the extent that Plaintiff was directed to file his brief in opposition within thirty (30) days. (Doc. No. 34.) To date, Plaintiff has neither filed a brief in opposition nor requested a second extension of time in which to do so.

On May 20, 2019, observing that Defendant McCoy raised the issue of whether Plaintiff exhausted his administrative remedies with respect to his claims in accordance with the Prison Litigation Reform Act ("PLRA"), the Court issued a Paladino Order informing the parties that it would consider the exhaustion issue in the context of summary judgment and, by doing so, would consider matters outside the pleadings in its role as factfinder.[1] (Doc. No. 35.) The Court provided Defendant McCoy fourteen (14) days to "amend or supplement his materials to further address the issue of whether Plaintiff has exhausted his administrative remedies." (Id.) The Court further noted that Plaintiff should file a brief in opposition addressing the issue of administrative exhaustion, as well as a statement of material facts specifically responding to Defendant McCoy's statement, within twenty-one (21) days from the date that Defendant McCoy filed any amended or supplemental materials. (Id.) Despite receiving an extension of

---

[1] See Paladino v. Newsome, 885 F.3d 203 (3d Cir. 2018).

3

time (Doc. Nos. 36, 37), Defendant McCoy has not filed any supplemental materials regarding the issue of administrative exhaustion. Accordingly, because there are no supplemental materials to which Plaintiff can respond, Defendant McCoy's motion for summary judgment is ripe for resolution.

**II.    LEGAL STANDARD**

Federal Rule of Civil Procedure 56(a) requires the Court to render summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." See Fed. R. Civ. P. 56(a). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. See id. at 248; Gray v. York Newspapers, Inc., 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Anderson, 477 U.S. at 257; Brenner v. Local 514, United Bhd. of Carpenters & Joiners of Am., 927 F.2d 1283, 1287-88 (3d Cir. 1991).

When determining whether there is a genuine issue of material fact, the Court must view the facts and all reasonable inferences in favor of the nonmoving party. See Moore v. Tartler, 986 F.2d 682 (3d Cir. 1993); Clement v. Consolidated Rail Corp., 963 F.2d 599, 600 (3d Cir. 1992); White v. Westinghouse Elec. Co., 862 F.2d 56, 59 (3d Cir. 1988). In order to avoid summary judgment, however, the nonmoving party may not rest on the unsubstantiated allegations of his or her pleadings. When the party seeking summary judgment satisfies its

4

burden under Rule 56 of identifying evidence that demonstrates the absence of a genuine issue of material fact, the nonmoving party is required to go beyond his pleadings with affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts that give rise to a genuine issue. See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts." See Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 586 (1986). When Rule 56 shifts the burden of production to the nonmoving party, that party must produce evidence to show the existence of every element essential to its case that it bears the burden of proving at trial, for "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." See Celotex, 477 U.S. at 323; see also Harter v. G.A.F. Corp., 967 F.2d 846, 851 (3d Cir. 1992).

In determining whether an issue of material fact exists, the Court must consider the evidence in the light most favorable to the nonmoving party. See White, 862 F.2d at 59. In doing so, the Court must accept the nonmovant's allegations as true and resolve any conflicts in his favor. See id. (citations omitted). However, a party opposing a summary judgment motion must comply with Local Rule 56.1, which specifically directs the oppositional party to submit a "statement of the material facts, responding to the numbered paragraphs set forth in the statement required [to be filed by the movant], as to which it is contended that there exists a genuine issue to be tried"; if the nonmovant fails to do so, "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted." See L.R. 56.1. A party cannot evade these litigation responsibilities in this regard simply by citing the fact that he is a pro se litigant. These rules apply with equal force to all parties. See Sanders v. Beard, Civ. No. 09-1384, 2010 WL 2853261, at *5 (M.D. Pa. July 20, 2010) (stating that pro se parties "are

not excused from complying with court orders and the local rules of court"); Thomas v. Norris, Civ. No. 02-01854, 2006 WL 2590488, at *4 (M.D. Pa. Sept. 8, 2006) (explaining that pro se parties must follow the Federal Rules of Civil Procedure).

## III. DISCUSSION

### A. Defendant McCoy's Statement of Material Facts[2]

Department of Corrections ("DOC") policy DC-ADM 804 provides that an inmate "who has been personally affected by a Department or facility action or policy [is] permitted to submit a grievance or appeal." (Doc. No. 21 ¶ 7.) Upon intake, all inmates are provided with a copy of the grievance policy and procedures manual as part of the inmate handbook. (Id. ¶ 4.) Moreover, "a copy of the grievance system policy and procedures manual is available on all housing blocks and in the institutional library for inmates to review or request to obtain copies." (Id.)

To begin the grievance process, an inmate "must submit a grievance in writing to the Facility Grievance Officer, using the grievance form which is available on all housing units or

---

[2] The Local Rules of Court provide that in addition to filing a brief in opposition to the moving party's brief in support of its motion, "[t]he papers opposing a motion for summary judgment shall include a separate, short and concise statement of material facts responding to the numbered paragraphs set forth in the statement [of material facts filed by the moving party] . . . as to which it is contended that there exists a genuine issue to be tried." M.D. Pa. L.R. 56. 1. The Rule further requires the inclusion of references to the parts of the record that support the statements. See id. Finally, the Rule states that the statement of material facts required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party. See id. Unless otherwise noted, the background herein is derived from Defendant McCoy's Rule 56.1 statement of material facts. (Doc. No. 21.) Plaintiff has failed to file a response to Defendant McCoy's statement of material facts in compliance with M.D. Pa. L.R. 56.1. Accordingly, the Court deems the facts set forth by Defendant McCoy to be undisputed. See M.D. Pa. L.R. 56. 1; Fed. R. Civ. P. 56(e)(2); Bowman v. Mazur, Civ. No. 08-173J, 2010 WL 2606291, at *3 (W.D. Pa. Oct. 30, 2010) ("Plaintiff's responsive statement of material facts is insufficient to create a genuine issue of material fact because it failed to comply with Local Rule 56.1.").

6

blocks, as well as the main and mini law libraries. (Id. ¶ 8.) The grievance must be submitted "within 15 working days after the event upon which the claim is based." (Id. ¶ 10.)

An inmate may appeal the initial review response or rejection to the Facility Manager (Superintendent) within fifteen (15) working days from the date of the initial review response or rejection. (Id. ¶ 11.) The "text of the appeal must contain the reasons for the appeal. Only an issue that was raised for Initial Review, determination of frivolousness, rejection and/or placement on grievance restriction may be appealed." (Id. ¶ 12.) The Facility Manager then provides a written response. (Id. ¶ 13.) The Facility Manager "may, among other things, Uphold the Initial Review Response, Uphold Inmate, Dismiss, Uphold in Part/Deny in Part, or Remand." (Id.)

An inmate may appeal the Facility Manager's response to final review by the Secretary's Office of Inmate Grievances and Appeals ("SOIGA"). (Id. ¶ 14.) "Only issues raised in both the original grievance and the appeal to the Facility Manager may be appealed to" SOIGA. (Id. ¶ 15.) SOIGA "may, among other things, Uphold Response, Uphold Inmate, Dismiss, Uphold in Part/Deny in Part, or Remand or Refer." (Id. ¶ 16.)

"Plaintiff is familiar with the grievance procedures, and is aware that they are set forth in ADM 804, which is written on the grievance forms." (Id. ¶ 17.) Plaintiff, however, did not follow the correct procedures for filing his grievances regarding his claims against Defendant McCoy because he "placed the notation 'without prejudice' at his signature line." (Id. ¶ 9.)

**B.  Exhaustion of Administrative Remedies**

Defendant McCoy asserts that he is entitled to summary judgment because Plaintiff failed to properly exhaust his administrative remedies. (Doc. No. 22.) Pursuant to the PLRA, a prisoner must pursue all available avenues of relief through the applicable grievance system

7

before initiating a federal civil rights action. See 42 U.S.C. § 1997e(a); Booth v. Churner, 532 U.S. 731, 741 n.6 (2001) ("[A]n inmate must exhaust irrespective of the forms of relief sought and offered through administrative avenues."). Section 1997e provides, in relevant part, that "[n]o action shall be brought with respect to prison conditions under [S]ection 1983 of this title, or any other [f]ederal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." See 42 U.S.C. § 1997e(a). The exhaustion requirement is mandatory. See Williams v. Beard, 482 F.3d 637, 639 (3d Cir. 2007); see also Booth, 532 U.S. at 742 (holding that the exhaustion requirement of the PLRA applies to grievance procedures "regardless of the relief offered through administrative procedures").

The United States Court of Appeals for the Third Circuit has further provided that there is no futility exception to Section 1997e's exhaustion requirement. See Nyhuis v. Reno, 204 F.3d 65, 75-76 (3d Cir. 2000). Courts have typically required across-the-board exhaustion by inmates seeking to pursue claims in federal court. See id. Additionally, courts have interpreted this exhaustion requirement as including a procedural default component, holding that inmates must fully satisfy the administrative requirements of the inmate grievance process before proceeding with a claim in federal court. See Spruill v. Gillis, 372 F.3d 218 (3d Cir. 2004); see also Oriakhi v. United States, 165 F. App'x 991, 993 (3d Cir. 2006) (providing that "there appears to be unanimous circuit court consensus that a prisoner may not fulfill the PLRA's exhaustion requirement by exhausting administrative remedies after the filing of the complaint in federal court"). Courts have also concluded that inmates who fail to complete the prison grievance process in a full and timely manner are barred from subsequently litigating claims in federal

court. See, e.g., Booth v. Churner, 206 F.3d 289 (3d Cir. 2000); Bolla v. Strickland, 304 F. App'x 22 (3d Cir. 2008).

This broad rule favoring full exhaustion allows for a narrowly-defined exception; if the actions of prison officials directly caused the inmate's procedural default as to a grievance, the inmate will not be required to comply strictly with this exhaustion requirement. See Camp v. Brennan, 219 F.3d 279 (3d Cir. 2000). However, courts also recognize a clear "reluctance to invoke equitable reasons to excuse [an inmate's] failure to exhaust as the statute requires." See Davis v. Warman, 49 F. App'x 365, 368 (3d Cir. 2002). Thus, an inmate's failure to exhaust will be excused only "under certain limited circumstances," see Harris v. Armstrong, 149 F. App'x 58, 59 (3d Cir. 2005), and an inmate may defeat a claim of failure to exhaust only by showing "he was misled or that there was some extraordinary reason he was prevented from complying with the statutory mandate." See Warman, 49 F. App'x at 368.

In the absence of competent proof that an inmate was misled by corrections officials, or some other extraordinary circumstances warranting a departure from strict compliance with the exhaustion requirement, courts frequently reject inmate requests for their failure to exhaust to be excused. An inmate, therefore, cannot excuse a failure to comply with these grievance procedures in a timely manner by simply claiming that his efforts constituted "substantial compliance" with this statutory exhaustion requirement. See Harris, 149 F. App'x at 59. Furthermore, an inmate cannot avoid this exhaustion requirement by merely alleging that the administrative policies were not clearly explained to him. See Warman, 49 F. App'x at 368. Consequently, an inmate's confusion regarding these grievances procedures does not, alone, excuse a failure to exhaust. See Casey v. Smith, 71 F. App'x 916 (3d Cir. 2003); see also Marsh v. Soares, 223 F.3d 1217, 1220 (10th Cir. 2000) ("[I]t is well established that 'ignorance of the

law, even for an incarcerated pro se petitioner, generally does not excuse prompt filing.'" (citations omitted)).

Recently, the Supreme Court considered what renders administrative remedies unavailable to an inmate such that a failure to exhaust can be excused. See Ross v. Blake, 136 S. Ct. 1850 (2016). The Court noted "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." See id. at 1859. First, an administrative procedure is not available "when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." See id. Second, a procedure is not available when it is "so opaque that it becomes, practically speaking, incapable of use." See id. Finally, a procedure is unavailable when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misinterpretation, or intimidation." See id. at 1860.

Here, Defendant McCoy argues that Plaintiff's grievance record demonstrates that he failed to properly exhaust his administrative remedies prior to filing the instant action because he did not follow the proper procedures for filing his relevant grievances. (Doc. No. 21 ¶ 9; Doc. No. 22 at 4-6.) Defendant McCoy has submitted a declaration from Helen Shambaugh, a grievance officer with SOIGA, stating that while Plaintiff did not file grievances regarding his claims against Defendant McCoy, he did not follow the proper procedures as set forth in DC-ADM 804 because "he placed the notation 'Without Prejudice' at his signature line.'" (Doc. No. 22-1 ¶ 16.) Shambaugh maintains that this language "was associated with violations of DOC policy because it was routinely used by inmates to improperly invoke the Uniform Commercial Code." (Id. ¶ 17.) The record reflects that Plaintiff's final appeals to SOIGA were dismissed

10

because they contained this language and therefore were "not in compliance with DOC policy DC-ADM 804." (Id. at 44, 51.) As noted above, a "procedurally defective administrative grievance or appeal" does not satisfy the PLRA's mandatory exhaustion requirement. See Woodford, 548 U.S. at 83; see also Spruill, 372 F.3d at 230.

Plaintiff has not responded to Defendant McCoy's motion for summary judgment and therefore has not refuted the defense that he failed to properly exhaust his claims against Defendant McCoy. Accordingly, because the PLRA requires full and proper exhaustion prior to the initiation of Plaintiff's claims in federal court, and this Court cannot excuse compliance with those requirements, Defendant McCoy's motion for summary judgment will be granted on the basis that Plaintiff failed to properly exhaust his administrative remedies as to his claims against him.

## IV. CONCLUSION

For the foregoing reasons, the Court will grant Defendant McCoy's motion for summary judgment. (Doc. No. 20.) An appropriate Order follows.