IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **RICHARD SEARS,** : | |
|     **Plaintiff** : | |
| : | No. 1:17-cv-00869 |
|     **v.** : | |
| : | (Judge Kane) |
| **DANTE MCCOY, et al.,** : | |
|     **Defendants** : | |

**MEMORANDUM**

Presently before the Court is the motion for summary judgment (Doc. No. 48) filed by Defendant Dante McCoy ("McCoy") following the United States Court of Appeals for the Third Circuit's remand of the above-captioned case (Doc. Nos. 44, 45). The motion is fully briefed and ripe for disposition. For the reasons that follow, the Court will grant in part and deny in part the motion for summary judgment.

**I.     BACKGROUND**

Pro se Plaintiff Richard Sears, an individual currently confined at the State Correctional Institution in Albion, Pennsylvania ("SCI Albion"), initiated the above-captioned action by filing a complaint pursuant to 42 U.S.C. § 1983 on May 16, 2017, against Defendants McCoy, Lieutenant A. Peters ("Peters"), Lieutenant J. Eveland ("Eveland"), Lieutenant Brian Carpentier ("Carpentier"), Captain Sciochitana ("Sciochitana"), Deputy Superintendent Facility Manager E. Baumbach ("Baumbach"), Deputy Superintendent for Centralized Services Anthony Luscavage ("Luscavage"), Superintendent Vincent Mooney ("Mooney"); and Chief Grievance Officer Dorina Varner ("Varner"), concerning events that Plaintiff alleges occurred while he was incarcerated at the State Correctional Institution in Coal Township, Pennsylvania ("SCI Coal Township"). (Doc. No. 1.) Plaintiff claims that after he filed grievances against Defendant McCoy, Defendant McCoy verbally abused and harassed him by calling him a "rat" in front of

other inmates and made a number of sexually explicit comments to him.  (Id.)  Plaintiff also alleges that Defendant McCoy retaliated against him for filing grievances by throwing out Plaintiff's commissary purchase slips, placing a "dark brown foreign object" in his meal, and stealing and destroying a photograph of Plaintiff's father.  (Id.)  Plaintiff also avers that Defendants Peters, Eveland, Mooney, Varner, Scicchitano, and Carpentier had an "opportunity to do something meaningful and positive for Mr. Sears and curb or deter any future forms of such behavior by defendant McCoy[,]" but they "did nothing, causing Mr. Sears to be further subjected to such behavior [by McCoy]."  (Id.)  Plaintiff did not assert any allegations against Defendants Baumbach or Luscavage.

In a Memorandum and Order dated September 12, 2017, the Court granted Plaintiff leave to proceed in forma pauperis and screened Plaintiff's complaint pursuant to 28 U.S.C. § 1915(e)(2).  (Doc. Nos. 5, 6.)  Specifically, the Court: (1) dismissed Plaintiff's claims of verbal abuse against Defendant McCoy; (2) dismissed his claims against Defendants Peters, Eveland, Carpentier, Sciochitana, and Varner because he could not maintain a claim based upon their handling of his grievances and appeals; (3) dismissed Defendants Baumbach and Luscavage without prejudice because Plaintiff had failed to make any allegations against them; and (4) noted that Plaintiff's First Amendment retaliation claim against Defendant McCoy could proceed.  (Doc. No. 5.)  The Court granted Plaintiff leave to file an amended complaint within thirty (30) days so that he could set forth allegations against Defendants Baumbach and Luscavage.  (Id.)

Plaintiff did not file an amended complaint.  Accordingly, by Order dated October 31, 2017, the Court directed service of Plaintiff's complaint upon Defendant McCoy.  (Doc. No. 7.)  Defendant McCoy filed his answer on December 5, 2017.  (Doc. No. 10.)  After the parties

engaged in discovery, Defendant McCoy filed a motion for summary judgment (Doc. No. 20) and supporting materials (Doc. Nos. 21, 22). After receiving an extension of time, Plaintiff filed a response in opposition. (Doc. No. 26.) After being granted leave to do so (Doc. Nos. 25, 27), Defendant McCoy filed a supplemental declaration in support of his motion for summary judgment on February 19, 2019. (Doc. No. 28.) On May 20, 2019, observing that Defendant McCoy raised the issue of whether Plaintiff exhausted his administrative remedies with respect to his claims in accordance with the Prison Litigation Reform Act ("PLRA"), the Court issued a Paladino Order informing the parties that it would consider the exhaustion issue in the context of summary judgment and, by doing so, would consider matters outside the pleadings in its role as factfinder.[1] (Doc. No. 35.) The Court provided Defendant McCoy fourteen (14) days to "amend or supplement his materials to further address the issue of whether Plaintiff has exhausted his administrative remedies." (Id.) The Court further noted that Plaintiff should file a brief in opposition addressing the issue of administrative exhaustion, as well as a statement of material facts specifically responding to Defendant McCoy's statement, within twenty-one (21) days from the date that Defendant McCoy filed any amended or supplemental materials. (Id.) Despite receiving an extension of time (Doc. Nos. 36, 37), Defendant McCoy did not file any supplemental materials regarding the issue of administrative exhaustion.

In a Memorandum and Order dated June 27, 2019, the Court granted Defendant McCoy's motion for summary judgment, concluding that Plaintiff had failed to properly exhaust his administrative remedies with respect to his claims against Defendant McCoy. (Doc. No. 38, 39.) Plaintiff filed a timely notice of appeal. (Doc. No. 41.) On July 8, 2020, the Third Circuit

---

[1] See Paladino v. Newsome, 885 F.3d 203 (3d Cir. 2018).

affirmed in part and vacated in part this Court's judgment.  See Sears v. McCoy, 815 F. App'x 668, 669 (3d Cir. 2020).  Specifically, the Third Circuit affirmed this Court's dismissal of Plaintiff's verbal harassment claims against Defendant McCoy, noting that "allegations of verbal harassment, unaccompanied by another injury, are not cognizable under § 1983."  See id. at 670.  The Third Circuit, however, agreed with Plaintiff that Defendant McCoy had not met his burden of proving that Plaintiff had failed to exhaust his administrative remedies on his retaliation claims regarding "food tampering, withholding a commissary slip, and theft of a photograph."  See id.  Moreover, the Third Circuit concluded that Plaintiff had substantially complied with the administrative grievance process with respect to his retaliation claims concerning Defendant McCoy's sexually explicit remarks and his labeling Plaintiff as a "rat."  See id. at 671.  The Third Circuit, therefore, affirmed this Court's judgment as to the dismissal of Plaintiff's verbal harassment claims against Defendant McCoy and his claims against all other Defendants and vacated the grant of summary judgment with respect to Plaintiff's retaliation claims against Defendant McCoy.  See id.

       The Third Circuit's mandate issued on July 30, 2020.  (Doc. No. 45.)  In an Order dated that same day, the Court reopened the above-captioned case and directed Defendant McCoy to file a motion for summary judgment addressing the merits of Plaintiff's First Amendment claims.  (Doc. No. 46.)  Defendant McCoy filed his motion for summary judgment and statement of material facts on September 14, 2020 (Doc. Nos. 48, 49), and filed his brief in support of his motion on September 28, 2020 (Doc. No. 50).  After receiving an extension of time to do so (Doc. No. 52), Plaintiff filed his oppositional materials on November 10, 2020.  (Doc. Nos. 54, 55, 56, 57).  Defendant McCoy filed his reply brief on November 24, 2020.  (Doc. No. 59.)

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) requires the Court to render summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." See Fed. R. Civ. P. 56(a). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. See id. at 248; Gray v. York Newspapers, Inc., 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Anderson, 477 U.S. at 257; Brenner v. Local 514, United Bhd. of Carpenters & Joiners of Am., 927 F.2d 1283, 1287-88 (3d Cir. 1991).

When determining whether there is a genuine issue of material fact, the Court must view the facts and all reasonable inferences in favor of the nonmoving party. See Moore v. Tartler, 986 F.2d 682 (3d Cir. 1993); Clement v. Consol. Rail Corp., 963 F.2d 599, 600 (3d Cir. 1992); White v. Westinghouse Elec. Co., 862 F.2d 56, 59 (3d Cir. 1988). To avoid summary judgment, however, the nonmoving party may not rest on the unsubstantiated allegations of his or her pleadings. When the party seeking summary judgment satisfies its burden under Rule 56 of identifying evidence that demonstrates the absence of a genuine issue of material fact, the nonmoving party is required to go beyond his pleadings with affidavits, depositions, answers to interrogatories, or the like in order to demonstrate specific material facts that give rise to a genuine issue. See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The party opposing the

motion "must do more than simply show that there is some metaphysical doubt as to the material facts." See Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 586 (1986).  When Rule 56 shifts the burden of production to the nonmoving party, that party must produce evidence to show the existence of every element essential to its case that it bears the burden of proving at trial, for "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." See Celotex, 477 U.S. at 323; see also Harter v. G.A.F. Corp., 967 F.2d 846, 851 (3d Cir. 1992).

In determining whether an issue of material fact exists, the Court must consider the evidence in the light most favorable to the nonmoving party.  See White, 862 F.2d at 59.  In doing so, the Court must accept the nonmovant's allegations as true and resolve any conflicts in his favor.  See id. (citations omitted).  However, a party opposing a summary judgment motion must comply with Local Rule 56.1, which specifically directs the oppositional party to submit a "statement of the material facts, responding to the numbered paragraphs set forth in the statement required [to be filed by the movant], as to which it is contended that there exists a genuine issue to be tried"; if the nonmovant fails to do so, "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted." See L.R. 56.1.  A party cannot evade these litigation responsibilities in this regard simply by citing the fact that he is a pro se litigant.  These rules apply with equal force to all parties.  See Sanders v. Beard, No. 09-1384, 2010 WL 2853261, at *5 (M.D. Pa. July 20, 2010) (stating that pro se parties "are not excused from complying with court orders and the local rules of court"); Thomas v. Norris, No. 02-01854, 2006 WL 2590488, at *4 (M.D. Pa. Sept. 8, 2006) (explaining that pro se parties must follow the Federal Rules of Civil Procedure).

## III.   STATEMENT OF MATERIAL FACTS[2]

Plaintiff filed his complaint in the above-captioned case in May of 2017.  (Doc. No. 49 ¶ 1.)  In his complaint, Plaintiff alleges that Defendant McCoy placed a "dark brown colored foreign object" in his food.  (Id. ¶ 4.)  Plaintiff alleges that on the date that this occurred, Defendant McCoy "made a 'mischievous comment' stating, 'Don't blame me.'"[3]  (Id. ¶ 6.)  Plaintiff did not keep the "brown foreign object" as evidence.  (Id. ¶ 10.)  In his complaint,

---

[2] The Local Rules provide that in addition to the requirement that a party file a brief in opposition to the moving party's brief in support of its motion, "[t]he papers opposing a motion for summary judgment shall include a separate, short and concise statement of material facts responding to the numbered paragraphs set forth in the statement [of material facts filed by the moving party] . . . as to which it is contended that there exists a genuine issue to be tried."  See M.D. Pa. L.R. 56. 1.  The Rule further requires the inclusion of references to the parts of the record that support the statements.  See id.  Finally, the Rule states that the statement of material facts required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party.  See id.  Unless otherwise noted, the background herein is derived from Defendant McCoy's Rule 56.1 statement of facts.  (Doc. No. 49.)

Plaintiff has complied with Local Rule 56.1 by filing a response to Defendant McCoy's statement of undisputed material facts.  (Doc. No. 56.)  Moreover, while Plaintiff's verified complaint (Doc. No. 1) may be treated as an affidavit in opposition to the motion for summary judgment, the allegations must be based on personal knowledge, and the Court is not "required to accept unsupported, self-serving testimony as evidence sufficient to create a jury question."  See Hammonds v. Collins, No. 12-236, 2016 WL 1621986, at *3 (M.D. Pa. Apr. 20, 2016) (citing Brooks v. Am. Broad. Co., 999 F.2d 167, 172 (6th Cir. 1993)).  Accordingly, the Court recites the undisputed facts above with footnotes setting forth the parties' relevant factual disputes.

[3] Plaintiff avers that on July 10, 2015, Defendant McCoy walked past his cell shortly after Plaintiff had received his meal tray.  (Doc. No. 1 ¶ 59.)  He states that Defendant McCoy made a "mischievous comment" at the cell door, stating "Don't blame me."  (Id.)  Plaintiff discovered the "dark brown colored foreign object in his food."  (Id. ¶ 60.)  He pressed the cell's emergency button, but Defendant McCoy "refused to do something positive" and told Plaintiff to eat the object.  (Id. ¶¶ 61-62.)  Plaintiff maintains further that Defendant McCoy told him that it was not a medical emergency even though Plaintiff at no time had requested medical assistance.  (Id. ¶¶ 62-63.)  Plaintiff showed the object to the other corrections officer who was assisting Defendant McCoy with collecting the meal trays.  (Id. ¶ 68.)

7

Plaintiff also alleges that a photograph of his deceased father was destroyed.[4] (Id. ¶ 5.) Plaintiff alleges that Defendant McCoy took the photograph.[5] (Id. ¶ 7.)

## IV. DISCUSSION

### A. Plaintiff's Retaliation Claim

To state a retaliation claim under the First Amendment, a plaintiff bears the burden of satisfying three (3) elements. First, a plaintiff must prove that he was engaged in a constitutionally protected activity. See Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001). Second, a plaintiff must demonstrate that he "suffered some 'adverse action' at the hands of prison officials." See id. (quoting Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000)). This requirement is satisfied when the adverse action is "sufficient 'to deter a person of ordinary firmness' from exercising his First Amendment rights." See id. (quoting Suppon v. Dadonna,

---

[4] Plaintiff asserts that on September 25, 2015, he placed the photograph beneath his mattress before preparing for a shower. (Id. ¶ 77.) Corrections Officer Brito came to the cell to escort Plaintiff to his shower, but Defendant McCoy indicated that he would take care of that task. (Id. ¶ 78.) Both Brito and Defendant McCoy escorted Plaintiff to the shower. (Id. ¶ 81.) Defendant McCoy then proceeded to enter Plaintiff's cell. (Id. ¶ 82.) Plaintiff avers that, from the shower, he watched Defendant McCoy enter his cell, turn the light on, and remain in the cell for four (4) to five (5) minutes. (Id. ¶ 83.) Shortly thereafter, Brito and another corrections officer immediately escorted Plaintiff back to his cell. (Id. ¶ 84.) When he entered the cell, "the first thing [Plaintiff] noticed" was that his mattress was flipped over in "disarray." (Id. ¶ 85.) He noted that the photograph of his father "was no longer in the location where he [had] placed it." (Id.)

[5] In his complaint, Plaintiff further avers that, in response to his act of filing grievances, Defendant McCoy made sexually explicit, derogatory remarks,[5] and also labeled him as a "rat" in front of other inmates. (Id. ¶¶ 22, 24, 27, 30, 33.) Plaintiff maintains further that on February 4, 2015, Defendant McCoy refused to give Plaintiff his commissary items (id. ¶ 25), and that on April 16, 2015, he collected Plaintiff's commissary slip, "blew a kiss at [Plaintiff]," walked away "smiling and laughing," and then discarded the slip, causing Plaintiff to not receive commissary the following week (id. ¶ 46). Plaintiff has also submitted a declaration, sworn under the penalty of perjury, setting forth the facts noted above. (Doc. No. 57 at 11-24.) He has also submitted declarations from inmates David Serrano and Cody Wright, sworn under the penalty of perjury, that Defendant McCoy labeled him as a "rat" and used sexually explicit, derogatory language towards him. (Id. at 4-8.)

8

2013 F.3d 228, 235 (3d Cir. 2000)).  Third, a prisoner must prove that "his constitutionally protected conduct was 'a substantial or motivating factor' in the decision to discipline him."  See Rauser, 241 F.3d at 333-34 (quoting Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977)).

The mere fact that an adverse action occurs after either a complaint or grievance is filed is relevant, but not dispositive, for the purpose of establishing a causal link between the two events.  See Lape v. Pennsylvania, 157 F. App'x 491, 498 (3d Cir. 2005).  Only when the facts of a particular case are "unusually suggestive" of a retaliatory motive will temporal proximity, on its own, support an inference of causation.  See Krouse v. Am. Sterilizer Co., 126 F.3d 494, 503 (3d Cir. 1997).  If a prisoner establishes a prima facie case of retaliation, the burden shifts to prison officials to show, by a preponderance of the evidence, that "they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest."  See Rauser, 241 F.3d at 334.  "This is often referred to as the 'same decision defense.'"  Watson v. Rozum, 834 F.3d 417, 422 (3d Cir. 2016).  If the prison officials can make this showing, it defeats the retaliation claim.  See Carter v. McGrady, 292 F.3d 152, 159 (3d Cir. 2002).

It is well-settled that Plaintiff engaged in protected activity by filing grievances.  See Mearin v. Vidonish, 450 F. App'x 100, 102 (3d Cir. 2011).  The Court, therefore, must next consider whether Plaintiff suffered adverse action.  To be actionable under § 1983, the adverse action "need not be great" but "must be more than de minimus."  See McKee v. Hart, 436 F.3d 165, 170 (3d Cir. 2006).  Moreover, "[t]he cumulative impact of retaliatory acts may become actionable even though the actions would be de minimis if considered in isolation."  See Brennan v. Norton, 350 F.3d 399, 422 n.17 (3d Cir. 2003).  Defendant McCoy does not directly address

the adverse action prong, but rather asserts that "Plaintiff has no facts in support of his claims, and his failure to retain the 'brown foreign object' has prejudiced [his] ability to defend the claim." (Doc. No. 50 at 5.) For the reasons discussed below, the Court disagrees.

In support of summary judgment, Defendant McCoy avers that Plaintiff has admitted that there are no facts or evidence to support his claims because of "his failure to answer the Statement of Material Facts from the original Summary Judgment Motion." (Id. at 5.) Defendant McCoy's argument, however, is misplaced. While Defendant McCoy is correct that the Court did deem his original statement of material facts to be undisputed because of Plaintiff's failure to file a response (Doc. No. 38 at 6 n.2), that statement of facts is not before the Court at this time. This Court's previous grant of summary judgment was based solely upon a conclusion that Plaintiff failed to properly exhaust his administrative remedies and at no time addressed any material facts regarding the merits of his retaliation claim. As noted supra, Plaintiff has filed a response, including a response to the statement of material facts, to the motion for summary judgment that is currently before the Court.

In any event, Defendant McCoy is incorrect that Plaintiff has failed to provide evidence in support of his retaliation claims. Plaintiff's complaint is verified and, therefore, may be treated as an affidavit in opposition to summary judgment. See Reese v. Sparks, 760 F.2d 64, 67 (3d Cir. 1985). Moreover, as noted supra, Plaintiff has provided his own declaration as well as two (2) declarations from other inmates in support of his claims.[6] (Doc. No. 57 at 4-8, 11-24.)

---

[6] In his reply brief, Defendant McCoy asserts that Plaintiff's affidavit from David Serrano is inadmissible hearsay because Serrano is now deceased. (Doc. No. 59 at 3.) In support of that assertion, Defendant McCoy cites to Hickey v. Merritt-Scully, 4:18-cv-1793 (M.D. Pa.), in which Kathleen Hickey has brought suit against various Department of Corrections officials and medical staff in her role as the administratrix of the estate of Michael A. Serrano. Defendant McCoy, however, has provided no evidence to the Court suggesting that David Serrano and

10

Defendant McCoy has not provided an affidavit in support of his motion for summary judgment but instead relies solely upon responses to Plaintiff's grievances regarding these alleged occurrences. These grievances, however, only concern the food tampering allegation and, essentially, credited Defendant McCoy's denial of tampering with Plaintiff's meal tray over Plaintiff's allegation. (Doc. No. 50-1.)

In light of the evidence presented by the parties, it is the Court's view that there are genuine issues of material fact regarding whether Defendant McCoy subjected Plaintiff to adverse action in response to Plaintiff engaging in protected activity by filing grievances.[7] Such

---

Michael A. Serrano are the same individual. Thus, without more, the Court cannot conclude at this time that the David Serrano affidavit constitutes inadmissible hearsay.

Defendant McCoy further contends that "[t]he allegations in the Cody Wright affidavit are also virtually all hearsay since it discusses conversations with unknown inmates." (Doc. No. 59 at 3.) Within the Third Circuit, however, "hearsay statements can be considered on a motion for summary judgment if they are capable of being admissible at trial." See Fraternal Order of Police, Lodge 1 v. City of Camden, 842 F.3d 231, 238 (3d Cir. 2016) (quoting Stelwagon Mfg. Co. v. Tarmac Roofing Sys., 63 F.3d 1267, 1275 n.17 (3d Cir. 1995)). Nothing in the record before the Court suggests that inmate Wright would be unavailable to testify should this case go to trial. See id.; see also McMillian v. Wetzel, 790 F. App'x 455, 458-59 (3d Cir. 2019) (concluding that district court erred in determining that inmate's affidavits, which contained hearsay, could not be considered to oppose a motion for summary judgment).

[7] Defendant McCoy asserts that the portion of Plaintiff's retaliation claim concerning food tampering should be dismissed because Plaintiff failed to preserve the item and, therefore, engaged in spoliation which prevents him "from defending against this claim." (Doc. No. 50 at 6.) He maintains that Plaintiff's allegation that he showed the item to an unnamed corrections officer "is convenient since by failing to identify the Officer, the inmate's story could not be substantiated." (Id.) Defendant McCoy argues that without the item, he cannot defend against the allegation because "an inspection of the item could prove it could not have been provided by him, could prove that the item was de minimus, or prove that it was simply a burnt portion of the meal which would do no harm and would not be caused by" him. (Id. at 6-7.)

"Spoliation occurs where: the evidence was in the party's control; the evidence is relevant to the claims or defenses in the case; there has been actual suppression or withholding of evidence; and, the duty to preserve the evidence was reasonably foreseeable to the party." Bull v. United Parcel Serv., Inc., 665 F.3d 68, 73 (3d Cir. 2012). A finding of spoliation can lead to sanctions, such as summary judgment in favor of the prejudiced party. See Hysick v. Razor USA, LLC, No. 1:15-

issues of fact will likely turn on a credibility assessment, a task in which this Court may not partake at the summary judgment stage.  See Anderson, 477 U.S. at 252.  Given the discrepancies in the parties' view of events, and viewing the facts in the light most favorable to Plaintiff, a reasonable juror could conclude that Defendant McCoy used sexually explicit language, called Plaintiff a "rat," tampered with his food tray, took the photograph of his father, failed to provide his commissary, and discarded his commissary slip because of Plaintiff's conduct of submitting grievances.  Accordingly, the Court will deny summary judgment as to Plaintiff's retaliation claim against Defendant McCoy.[8]

### B.   Plaintiff's State Law Claims

Plaintiff raises various state law tort claims based upon Defendant McCoy's actions, including claims for defamation of character, intentional infliction of emotional distress,

---

cv-745, 2017 WL 4084054, at *5 (M.D. Pa. Jan. 9, 2017).  Moreover, "a finding of bad faith is pivotal to a spoliation determination."  See Bull, 665 F.3d at 79.

The Court cannot agree that a finding of spoliation is warranted in this matter.  The record is silent as to what happened to the object after Plaintiff attempted to report it.  See Hysick, 2017 WL 4084054, at *6 (concluding that spoliation was not warranted on the same basis).  Moreover, Defendant McCoy has not met his burden of demonstrating that Plaintiff acted in bad faith.  Accordingly, the Court concludes that Defendant McCoy's spoliation argument is not a basis upon which to grant summary judgment.

[8] Defendant McCoy's brief in support of summary judgment does not thoroughly address the causation prong of a retaliation claim, only vaguely asserting that Plaintiff does not "allege the amount of delay that occurred" after his commissary slip was discarded.  (Doc. No. 50 at 8.)  While causation may be established by direct or circumstantial evidence, "motivation is almost never subject to proof by direct evidence."  See Watson v. Rozum, 834 F.3d 417, 422 (3d Cir. 2016).  Thus, motivation is typically demonstrated by "evidence of either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing that suggests a causal link."  See id.  Given the discrepancies in the parties' view of events, there are also genuine issues of material fact regarding whether any adverse action Plaintiff suffered was causally connected to his act of filing grievances.  Furthermore, Defendant McCoy does not raise qualified immunity as a defense to Plaintiff's retaliation claim.

nuisance, sexual harassment, slander, and wanton misconduct. (Doc. No. 1 ¶ 125.) Defendant McCoy asserts that he is protected from these claims by operation of the doctrine of sovereign immunity. (Doc. No. 50 at 8-9.)

Under Pennsylvania's sovereign immunity statute, "the Commonwealth, and its officials and employees acting within the scope of their duties, shall continue to enjoy sovereign and official immunity and remain immune from suit except as the General Assembly shall specifically waive the immunity." See 1 Pa. Cons. Stat. Ann. § 2310. Pursuant to Section 8522(b) of Title 42, the following nine exceptions to sovereign immunity are recognized: (1) operation of any motor vehicle in the possession or control of a Commonwealth party; (2) acts of health care employees of Commonwealth agency medical facilities or institutions; (3) care, custody, or control of personal property in the possession or control of Commonwealth parties; (4) dangerous conditions posed by Commonwealth agency real estate and sidewalks; (5) dangerous conditions of highways under the jurisdiction of Commonwealth agency that are created by potholes or sinkholes or other similar conditions created by natural elements; (6) care, custody, or control of animals in the possession or control of a Commonwealth party; (7) sale of liquor at Pennsylvania liquor stores; (8) acts of a member of the Pennsylvania military forces; and (9) administration, manufacture and use of a toxoid or vaccine. See 42 Pa. Cons. Stat. Ann. § 8522(b). In the instant case, Plaintiff's claims do not fall within any of these nine (9) exceptions.

Moreover, sovereign immunity applies even to intentional torts committed by Commonwealth defendants acting in their individual capacities. See Story v. Mechling, 412 F. Supp. 2d 509, 518 (W.D. Pa. 2006), aff'd, 214 F. App'x 161 (3d Cir. 2007). Sovereign immunity "applies to Commonwealth employees in both their official and individual capacities,

13

so long as the employees are 'acting within the scope of their duties.'" See Larsen v. State Emps' Ret. Sys., 553 F. Supp. 2d 403, 420 (M.D. Pa. 2008).

> Under Pennsylvania law, an action falls within the scope of employment if it: (1) is the kind that the employee is employed to perform; (2) occurs substantially within the job's authorized time and space limits; (3) is motivated at least in part by a desire to serve the employer; and (4) if force was used by the employee against another, the use of force is not unexpectable by the employer.

Savage v. Judge, No. 05-2551, 2007 WL 29283, at *5 (E.D. Pa. Jan. 2, 2007). Moreover, "even unauthorized acts may be within the scope of employment 'if they are clearly incidental to the [employer's] business.'" See Brumfield v. Sanders, 232 F.3d 376, 381 (3d Cir. 2000) (quoting Shuman Estate v. Weber, 276 Pa. Super. 209, 216, 419 A.2d 169 (1980)). In the instant action, the relevant evidence of record demonstrates that Defendant McCoy was acting within the scope of his employment. Accordingly, because he is entitled to sovereign immunity, the Court will grant Defendant McCoy summary judgment as to Plaintiff's state law tort claims.

## V.     CONCLUSION

For the foregoing reasons, the Court will grant in part and deny in part Defendant McCoy's motion for summary judgment. (Doc. No. 48.) The motion will be granted with respect to Plaintiff's state law claims and denied with respect to Plaintiff's First Amendment retaliation claims. An appropriate Order follows.