**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **RICHARD SEARS,** | : | |
| **Plaintiff** | : | **No. 1:17-cv-00869** |
| | : | |
| **v.** | : | **(Judge Kane)** |
| | : | |
| **DANTE MCCOY, <u>et</u> <u>al.</u>,** | : | |
| **Defendants** | : | |

<u>**MEMORANDUM**</u>

The above-captioned action comes before the Court, <u>sua</u> <u>sponte</u>, based upon Plaintiff Richard Sears ("Plaintiff")'s failure to prosecute. For the reasons set forth below, the Court finds that Plaintiff's failure to prosecute warrants dismissal of his surviving claims under Rule 41 of the Federal Rules of Civil Procedure.

I.       **BACKGROUND**

Plaintiff, a former prisoner of the Pennsylvania Department of Corrections ("DOC"), commenced this civil rights action on May 16, 2017, by filing a complaint pursuant to the provisions of 42 U.S.C. § 1983 ("Section 1983"), concerning events that allegedly occurred while he was incarcerated at State Correctional Institution Coal Township ("SCI Coal Township") in Coal Township, Pennsylvania. (Doc. No. 1.) Plaintiff named numerous individuals as Defendants, all of whom worked at SCI Coal Township during the period of time relevant to his claims. (<u>Id.</u>)

More specifically, Plaintiff named Dante McCoy ("Defendant McCoy"), a corrections officer, against whom he asserted claims of verbal harassment and retaliation. (<u>Id.</u>) In relevant part, Plaintiff alleged that Defendant McCoy retaliated against him for filing prison grievances, in violation of his First Amendment rights, by making sexually explicit remarks towards him, referring to him as a "rat" in front of other inmates, tampering with his food, withholding his

commissary slip, failing to provide his commissary, and stealing a photograph of his father.  (Id.)
In addition to naming Defendant McCoy, Plaintiff also named as Defendants numerous prison
staff and officials, against whom he asserted claims based solely upon their roles in supervising
Defendant McCoy and in reviewing Plaintiff's grievances.  (Id.)

　　　At the screening stage of this litigation, the Court dismissed Plaintiff's claims of verbal
harassment against Defendant McCoy, as well as Plaintiff's claims against the various prison
staff and officials.  (Doc. Nos. 5, 6.)  Although Plaintiff was granted leave to amend his
complaint with respect to some of those prison officials (id.), Plaintiff did not file an amended
complaint.  As a result, on October 31, 2017, the Court permitted only Plaintiff's First
Amendment retaliation claims to proceed against Defendant McCoy and directed service of the
complaint upon Defendant McCoy.  (Doc. No. 7.)

　　　Following discovery, Defendant McCoy filed a motion for summary judgment and
supporting materials in which he argued that Plaintiff failed to exhaust administrative remedies
regarding the allegations in his complaint.  (Doc. Nos. 20, 21, 22, 28.)  The Court agreed with
Defendant McCoy and granted judgment in his favor, concluding that he had met his burden to
establish that Plaintiff failed to exhaust administrative remedies.  (Doc. Nos. 38, 39.)  Plaintiff
subsequently filed an appeal from the Court's judgment.  (Doc. No. 41.)

　　　In July 2020, the United States Court of Appeals for the Third Circuit ("Third Circuit")
affirmed in part and vacated in part the Court's judgment.  (Doc. Nos. 44, 45.)  The Third Circuit
affirmed the Court's judgment insofar as the Court dismissed (1) Plaintiff's verbal harassment
claims against Defendant McCoy and (2) Plaintiff's claims against the other Defendants—i.e.,
the various prison staff and officials.  (Doc. No. 45-2 at 6.)  However, the Third Circuit vacated
the Court's judgment insofar as the Court granted summary judgment on Plaintiff's First

Amendment retaliation claims against Defendant McCoy.  (Id. at 6–7.)  In support, the Third Circuit explained that Defendant McCoy did not meet his burden of proving that Plaintiff failed to exhaust administrative remedies on his retaliation claims regarding allegations that Defendant McCoy tampered with Plaintiff's food, withheld his commissary slip, and stole a photograph of his father.  (Id. at 5.)  The Third Circuit also explained that, with respect to Plaintiff's retaliation claims regarding allegations that Defendant McCoy made sexually explicit remarks to Plaintiff and referred to him as a "rat" in front of other inmates, the Court erred in determining that these claims were not properly exhausted.  (Id. at 6 (stating that Plaintiff had substantially complied with the prison's administrative remedy process).)  Accordingly, the Third Circuit vacated the Court's judgment with respect to Plaintiff's First Amendment retaliation claims against Defendant McCoy and remanded the matter for further proceedings.  (Id. at 6–7.)

Following the remand, the Court issued an Order on July 30, 2020, directing Defendant McCoy to file a motion for summary judgment on the merits of Plaintiff's surviving retaliation claims.  (Doc. No. 46.)  Defendant McCoy filed a motion for summary judgment and supporting materials in September 2020.  (Doc. Nos. 48, 49, 50.)  On January 26, 2021, the Court issued a Memorandum and Order denying Defendant McCoy's motion for summary judgment on Plaintiff's retaliation claims (Doc. Nos. 61, 62), concluding that a reasonable juror could find "that Defendant McCoy used sexually explicit language, called Plaintiff a 'rat,' tampered with his food tray, took the photograph of his father, failed to provide his commissary, and discarded his commissary slip because of Plaintiff's conduct of submitting grievances."  (Doc. No. 61 at 12.)

However, in its January 26, 2021 Memorandum and Order, the Court granted Defendant McCoy's motion for summary judgment as to Plaintiff's state law tort claims.  (Doc. Nos. 61,

3

62.)  According to Defendant McCoy's position, he understood Plaintiff's complaint as "assert[ing] vague and undefined state law claims."  (Doc. No. 50 at 8.)  As a result, Defendant McCoy argued that Plaintiff's "state law claims, if any, should be dismissed."  (Id. at 9.)  The Court agreed and granted Defendant McCoy's motion with respect to any state law tort claims asserted by Plaintiff.  (Doc. No. 61 at 12–14.)  However, the Court directed the Clerk of Court to defer the entry of judgment in favor of Defendant McCoy on these claims until the conclusion of this case.  (Doc. No. 62.)

As a result of these rulings, the Court directed Plaintiff and Defendant McCoy to file a joint status report as to whether they would be amenable to having this action referred to mediation.  (Id.)  On February 9, 2021, Defendant McCoy filed a letter with the Court, explaining that he was not interested in participating in mediation.  (Doc. No. 63.)  In response to Defendant McCoy's letter, the Court issued an Order on February 10, 2021, informing the parties that trial and trial-related dates would be scheduled by way of a future order.  (Doc. No. 64 (explaining that the Court had re-entered Phase One of the COVID-19 Recovery Guidelines adopted by the Court pursuant to Standing Orders 2020-19, 2020-30, and 2020-33).)

Thereafter, on July 5, 2021, the Court held a telephonic status conference with the parties. (Doc. No. 65.)  During that conference, the Court discussed with the parties the potential resolution of Plaintiff's other then-pending civil case (i.e., Sears v. Mooney, No. 1:17-cv-00050 (M.D. Pa. filed January 9, 2017) ("Sears I")) before proceeding to trial on the instant action.  In addition, the Court stated that it would endeavor to locate counsel for Plaintiff.  See (id.).  As a result, the instant action remained inactive for an extended period of time.  And, during this extended period of time, it appears that Plaintiff has had no contact with opposing counsel (Doc. No. 70) or the Court.  In fact, it appears that Plaintiff has had no contact with the Court since

January 2021, when he was released from the custody of the DOC.  (Doc. No. 60 (containing Plaintiff's notice of change of address, indicating that he was residing in Pittsburgh, Pennsylvania).)

Once an ultimate resolution was reached by the parties in Sears I, and following the passage of some additional time, the Court issued an Order on September 22, 2023, directing Plaintiff and Defendant McCoy to each file a status report on or before October 13, 2023, concerning the status of this litigation.  (Doc. No. 69.)  In accordance with the Court's Order, Defendant McCoy's counsel filed a status report on October 11, 2023, explaining that the case appeared ready for a trial date to resolve Plaintiff's surviving First Amendment retaliation claims against Defendant McCoy.  (Doc. No. 70.)  Defendant McCoy's counsel also explained, however, that there has been a lack of contact between defense counsel and Plaintiff since 2021.  (Id.)  As a result, Defendant McCoy's counsel requested that the Court issue a rule to show cause as to whether this action should proceed.  (Id.)

As reflected by the Court's docket, Plaintiff neither filed a status report nor sought an extension of time in which to do so.  Thus, after receiving Defendant McCoy's letter, the Court directed Plaintiff to show cause on or before November 1, 2023, as to whether this action should proceed against Defendant McCoy.  (Doc. No. 71.)  However, Plaintiff has not filed a response to that show cause Order or sought an extension of time in which to do so.  Thus, Plaintiff has, again, failed to comply with a Court Order.

Accordingly, it is in light of this background that Plaintiff's failure to prosecute this action comes before the Court, sua sponte, under Federal Rule of Civil Procedure 41(b).

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 41(b) allows for the dismissal of an action for failure of a plaintiff "to prosecute or to comply with these rules or a court order[.]"  See Fed. R. Civ. P. 41(b).  District courts have the inherent power to dismiss an action sua sponte for failure to prosecute.  See Chambers v. NASCO, Inc., 501 U.S. 32, 44 (1991); see also R & C Oilfield Servs. LLC v. Am. Wind Transp. Grp. LLC, 45 F.4th 655, 661 (3d Cir. 2022) (stating that "[c]ourts possess inherent power to manage their own affairs so as to achieve the orderly and expeditious disposition of cases" and that "[t]his includes the authority to dismiss a case for lack of prosecution" (citation, internal citation, and internal quotation marks omitted)).

When determining whether to dismiss an action for a plaintiff's failure to prosecute under Rule 41(b), the Court must consider and balance the six (6) factors set forth by the Third Circuit in Poulis v. State Farm Fire and Casualty Company, 747 F.2d 863 (3d Cir. 1984):

> (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense.

See id. at 868–70.  However, no single factor is dispositive, and not all of these factors must be satisfied in order for the Court to dismiss an action.  See Mindek v. Rigatti, 964 F.2d 1369, 1373 (3d Cir. 1992); Briscoe v. Klaus, 538 F.3d 252, 263 (3d Cir. 2008) (stating that "we have also made it clear that 'not all of the Poulis factors need be satisfied in order to dismiss a complaint'" (quoting Mindek, 964 F.2d at 1373)).

### III.    DISCUSSION

In accordance with the legal standard set forth above, the Court addresses each of the

Poulis factors in turn below.  Ultimately, the Court's assessment of those factors leads the Court

to conclude that Plaintiff's lack of prosecution in this litigation warrants dismissal, with

prejudice, of his First Amendment retaliation claims against Defendant McCoy under Rule 41 of

the Federal Rules of Civil Procedure.

### A.      Extent of the Party's Responsibility

As to the first factor, extent of the party's responsibility, the Court finds that Plaintiff is a

self-represented litigant, and, thus, it is his personal responsibility to comply with the Court's

Orders.  See Briscoe, 538 F.3d at 258; Emerson v. Thiel Coll., 296 F.3d 184, 190 (3d Cir. 2002);

Sanders v. Beard, No. 09-cv-01384, 2010 WL 2853261, at *5 (M.D. Pa. July 20, 2010).  As

stated by the Third Circuit, "it is logical to hold a pro se plaintiff personally responsible for

delays in his case because a pro se plaintiff is solely responsible for the progress of his case,

whereas a plaintiff represented by counsel relies, at least in part, on his or her attorney."  See

Briscoe, 538 F.3d at 258–59 (citation and emphasis omitted).

Here, Plaintiff has failed to have any contact with the Court in this case since 2021 and

has also recently failed to comply with two (2) Court Orders (Doc. Nos. 69, 71), one of which

specifically directed him to show cause on or before November 1, 2023, as to whether this action

should proceed against Defendant McCoy (Doc. No. 71).  Thus, because there is no indication on

the Court's docket that Plaintiff did not receive the Court's Orders or was unable to contact the

Court for over two (2) years, the Court finds that Plaintiff, as a self-represented litigant, is

personally responsible for such inaction in this case.  See Hildebrand v. Allegheny County, 923

F.3d 128, 133 (3d Cir. 2019) (stating that, "in determining whether dismissal is appropriate, we

7

look to whether the party bears personal responsibility for the action or inaction which led to the dismissal" (citation and internal quotation marks omitted)).  Accordingly, the Court concludes that this first factor, the extent of the party's responsibility, weighs heavily in favor of dismissal of Plaintiff's First Amendment retaliation claims against Defendant McCoy.

### B.      Prejudice to the Adversary

When examining the second <u>Poulis</u> factor, prejudice to the adversary, the Court must consider whether Plaintiff's failure to comply with the Court's Order prejudices Defendant McCoy.  "Generally, prejudice includes the irretrievable loss of evidence, the inevitable dimming of witnesses' memories, or the excessive and possibly irremediable burdens or costs imposed on the opposing party." <u>Briscoe</u>, 538 F.3d at 259 (citation and internal quotation marks omitted).  Prejudice, however, "is not limited to irremediable or irreparable harm.  It also includes the burden imposed by impeding a party's ability to prepare effectively a full and complete trial strategy." <u>See</u> <u>id.</u> (citations and internal quotation marks omitted).

Here, the Court finds that Plaintiff's failure to communicate with the Court, and Plaintiff's failure to comply with the Court's Orders, thwarts and delays resolution of his surviving claims against Defendant McCoy.  The Court also finds that, going forward, Plaintiff's lack of prosecution would prejudice Defendant McCoy because, without Plaintiff's participation in this litigation, Defendant McCoy will be unable to seek a timely resolution of the case.  And, finally, the Court finds that, without Plaintiff's communication with opposing counsel and the Court, Defendant McCoy will be unable to have a concrete sense of Plaintiff's proposed witnesses or evidence and, thus, will be unable to formulate a trial plan, thereby prejudicing him in his trial preparations.  <u>See</u> (Doc. No. 70 (stating that defense counsel has not had any contact with Plaintiff since 2021)); <u>see also</u> <u>Ware v. Rodale Press, Inc.</u>, 322 F.3d 218, 222 (3d Cir. 2003)

(explaining that "the burden imposed by impeding a party's ability to prepare effectively a full and complete trial strategy is sufficiently prejudicial").  Accordingly, for these reasons, the Court concludes that this second factor, prejudice to the adversary, weighs heavily in favor of dismissal of Plaintiff's First Amendment retaliation claims against Defendant McCoy.

      C.      **History of Dilatoriness**

In examining the third <u>Poulis</u> factor, history of dilatoriness, the Court recognizes that Plaintiff has failed to communicate with the Court since 2021, <u>see</u> (Doc. Nos. 60, 65, 70), and has also failed to comply with two (2) Court Orders, one of which—as discussed above—specifically directed Plaintiff to show cause as to whether this action should proceed against Defendant McCoy (Doc. Nos. 69, 71).  Thus, as a preliminary matter, the Court finds that these failures suggest Plaintiff's intent not to continue with this litigation against Defendant McCoy.

That being said, however, the Court also recognizes that "a history of dilatoriness" is generally demonstrated through "extensive or repeated delay or delinquency[.]"  <u>See</u> <u>Hildebrand</u>, 923 F.3d at 135; <u>see also</u> <u>Briscoe</u>, 538 F.3d at 261 (stating that conduct which "occurs one or two times is insufficient to demonstrate a history of dilatoriness (citation and internal quotation marks omitted)).  Moreover, "[w]hile extensive delay may weigh in favor of dismissal, a party's problematic acts must be evaluated in light of its behavior over the life of the case."  <u>See</u> <u>Hildebrand</u>, 923 F.3d at 135 (citation and internal quotation marks omitted).  Indeed, such delay can be mitigated by the time during which the party litigates the case responsibly.  <u>See</u> <u>id.</u> (showing by way of example that, because the plaintiff in <u>Adams v. Trs. of the N.J. Brewery Emps.' Pension Tr. Fund</u>, 29 F.3d 863 (3d Cir. 1994) "had litigated the case responsibly for ten years prior to the hiatus, the delay was somewhat mitigated and weighed toward, but did not mandate, dismissal" (citation, internal quotation marks, and alterations omitted)).

Thus, while the Court recognizes Plaintiff's failures as described above, the Court cannot say that Plaintiff's dilatoriness is so extensive or repetitive as to weigh in favor of dismissal.  See Hildebrand, 923 F.3d at 135 (stating that "[m]ost cases where the court found a history of dilatoriness involved repeated delay[,]" and citing Ware, 322 F.3d at 224, where "plaintiffs failed repeatedly to provide a damages calculation over a five-year period[,]" and Emerson, 296 F.3d at 191, "where plaintiff made multiple requests for stays and failed to meet deadlines").  This is especially true here since Plaintiff has, up until his release from DOC custody in 2021 (Doc. No. 60), litigated this action responsibly.

Accordingly, for these reasons, the Court concludes that, although Plaintiff's failures suggest his intent not to continue with this litigation, his failure to comply with the Court's Orders has been recent when compared to the life of this case.  Thus, the Court concludes that this third factor, history of dilatoriness, is neutral as it neither weighs in favor of nor against dismissal of Plaintiff's First Amendment retaliation claims against Defendant McCoy.

### D.    Willful or Bad Faith

The Court next evaluates the fourth Poulis factor and, specifically, whether Plaintiff's conduct was willful or in bad faith.  While the Court is unable to assess, based upon the record before it, whether Plaintiff has acted in bad faith, the Court finds that Plaintiff's failure to communicate with the Court and his failure respond to the Court's Orders can be appropriately described as willful conduct, and not merely inadvertent or negligent conduct.  See Hildebrand, 923 F.3d at 135 (explaining that, under the fourth Poulis factor, "[w]illfulness involves intentional or self-serving behavior" (citation and internal quotation marks omitted)); Emerson, 296 F.3d at 191 (agreeing with the district court's finding that "failing to comply with the court's orders" and "dragging the case out" was "willful" conduct); Gilyard v. Dauphin Cnty. Work

10

Release, No. 10-cv-01657, 2010 WL 5060236, at *2 (M.D. Pa. Dec. 6, 2010) (concluding that the "[p]laintiff's repeated dilatory conduct and failure to abide by court orders demonstrate a willful disregard for procedural rules and court directives").  Accordingly, the Court concludes that the fourth factor, willful or bad-faith conduct, weighs heavily in favor of dismissal of Plaintiff's First Amendment retaliation claims against Defendant McCoy.

      **E.**     **Effectiveness of Sanctions**

An examination of the fifth <u>Poulis</u> factor, the effectiveness of sanctions other than dismissal, demonstrates that alternative sanctions are unlikely to prove effective here.  Plaintiff has not responded to the Court's Orders, has not attempted to explain his failure to respond to the Court's orders, and has not attempted to seek additional time in which to do so.  As such, Plaintiff's failures lead to an inference that issuing additional Orders to him would be ineffective. Furthermore, Plaintiff is proceeding pro se and <u>in forma pauperis</u> (Doc. No. 6) and, thus, there is no indication that imposing monetary sanctions against him would remedy his lack of prosecution in this case.[1]  <u>See Emerson</u>, 296 F.3d at 191 (explaining that "monetary sanctions would not be an effective alternative" where the plaintiff was proceeding <u>in forma pauperis</u>). Accordingly, for these reasons, the Court concludes that this fifth factor, effectiveness of sanctions, weighs heavily in favor of dismissal of Plaintiff's First Amendment retaliation claims against Defendant McCoy.

---

[1]  Notably, Plaintiff is no longer incarcerated (Doc. No. 60), and, thus, he may now be gainfully employed.  However, because Plaintiff has not had any contact with the Court since 2021, when he was released from DOC custody, there is no basis upon which the Court could reach such a conclusion.

### F.      Meritoriousness of the Claim

Lastly, regarding the sixth Poulis factor, meritoriousness of the claim, the Court observes that a claim is considered meritorious when the allegations in the complaint, if they were to be established at trial, would support recovery by the plaintiff.  See Poulis, 747 F.2d at 869–70.  As a result, in order to the determine whether a party's claims are meritorious, courts use the standard for a Rule 12(b)(6) motion to dismiss for failure to state a claim.  See Briscoe, 538 F.3d at 263.

Here, Plaintiff asserts First Amendment retaliation claims against Defendant McCoy, which, as discussed above, have survived the summary judgment stage of this litigation and are in a trial-ready posture.  A fortiori, Plaintiff's surviving claims against Defendant McCoy have some merit.  However, even when making this observation, the Court ultimately finds that the true merit of Plaintiff's claims against Defendant McCoy cannot be appropriately determined without his participation in this litigation.  Accordingly, while the Court concludes that the sixth factor, meritoriousness of Plaintiff's claims, weighs slightly against dismissal, it is of minimal significance to the Court.

### G.      Conclusion

On consideration and balance of all of the Poulis factors, the Court concludes that Plaintiff's failure to contact the Court or opposing counsel for over two (2) years, coupled with Plaintiff's failure to respond to the Court's recent Orders—including an Order that directed him to show cause as to whether this action should proceed against Defendant McCoy—demonstrates his lack of prosecution, warranting dismissal of his case under Rule 41(b) of the Federal Rules of Civil Procedure.  Accordingly, while Plaintiff's claims, if proven at trial, may have some merit, this Poulis factor alone is not dispositive.  See Hildebrand, 923 F.3d at 132 (explaining that

"[n]one of the <u>Poulis</u> factors is alone dispositive, and it is also true that not all of the factors need to be satisfied to justify dismissal of a complaint for lack of prosecution" (citation omitted)); <u>Briscoe</u>, 538 F.3d at 263 (stating that "no single <u>Poulis</u> factor is dispositive . . . [and it is] clear that not all of the <u>Poulis</u> factors need be satisfied in order to dismiss a complaint" (citations and internal quotation marks omitted)).  Thus, for all of the foregoing reasons, the Court will dismiss Plaintiff's surviving First Amendment retaliation claims against Defendant McCoy with prejudice.  <u>See</u> <u>Hildebrand</u>, 923 F.3d at 132 (explaining that dismissal with prejudice is a drastic sanction that must be used as a last resort, but also recognizing that, in appropriate cases, dismissal is "a sanction rightfully in the district courts' toolbox . . . ").

## IV.    CONCLUSION

Accordingly, for all of the foregoing reasons, the Court will dismiss with prejudice Plaintiff's surviving First Amendment retaliation claims against Defendant McCoy.  In addition, consistent with the January 26, 2021 Order (Doc. No. 62) by this Court, judgment will also enter in favor of Defendant McCoy on Plaintiff's state law tort claims.  An appropriate Order follows.


 s/ Yvette Kane
Yvette Kane, District Judge
United States District Court
Middle District of Pennsylvania